## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN H. OLAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-266 Erie** |

| | | |
|---|---|---|
| **HENRY M. HEARNE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-276 Erie** |

| | | |
|---|---|---|
| **PAUL L. PLYLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-277 Erie** |

| | | |
|---|---|---|
| **WILLIAM F. LUNDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-278 Erie** |

| | | |
|---|---|---|
| **LYNN A. RHODES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-279 Erie** |

| | | |
|---|---|---|
| **TERRY K. ROCKWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-280 Erie** |

**CHARLES D. WILSON,**                        )
                                             )
     **Plaintiff,**                            )
                                             )
        **v.**                                 )     **Civ. No. 05-122 Erie**
-----------------------------------------------------
                                             )
**MOTION CONTROL INDUSTRIES,**               )
**DIVISION OF CARLISLE**                      )
**CORPORATION, RETIREMENT**                   )
**PLAN FOR BARGAINING UNIT**                  )
**EMPLOYEES OF MOTION CONTROL** )
**INDUSTRIES,**                               )
**DIVISION OF CARLISLE**                      )
**CORPORATION**                               )
                                             )
     **Defendants.**                           )

## Opinion

Presently pending in each of the seven above-captioned cases are nearly identical cross-motions for summary judgment. Plaintiffs are former employees of the former Ridgeway facility of Motion Control Industries, a division of Carlisle Corporation. The Ridgeway facility ceased operations on January 11, 2002, and permanently laid off all employees. Plaintiffs, and other employees, continued to receive pay and benefits through March 16, 2002 under the Worker Adjustment and Retraining Notification Act ("WARN" Act), 29 U.S.C. 2101 et seq.

In all seven cases, the plaintiffs seek disability benefits under the Retirement Plan for Bargaining Unit Employees of Motion Control Industries. Employee Retirement Income Security Act of 1974 ("ERISA"). 28 U.S.C. § 1132(a)(1)(B). Each of the seven related disability claim cases present separate and independent factual issues regarding the nature, timing, and extent of each Plaintiff's alleged disability. However, there are two common threshold issues to all of the cases that may be dispositive of the outcome, and which are the subject of the present cross-motions for summary judgment.

2

The first issue is whether the Plaintiffs have exhausted their administrative remedies. Plaintiffs acknowledge that they did not follow the proper administrative procedures but argue that they should be excused from the exhaustion requirement because of futility. A determination of this issue in favor of Defendants would result in a dismissal of the cases without prejudice. A determination in favor of Plaintiffs would move the cases forward to the next threshold issue.

The second issue is whether the Plan has a legal obligation to consider a participant for a disability pension when the participant's employment with the Defendant Employer was terminated at or before the date of disability due to a permanent plant closing. This issue concerns the question of whether the court applies a de novo or arbitrary and capricious standard of review. A determination of this issue in favor of Defendants would conclude the litigation; while a determination in favor of Plaintiffs continues the actions into the next phase of discovery. In addressing these issues, we refer to Defendants collectively as "Motion Control."

## I. Exhaustion of Administrative Remedies

Plaintiffs assert claims for the recovery of Disability Retirement Benefits pursuant to section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides:

A civil action may be brought (1) by a participant or beneficiary– . . . .(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . .

29 U.S.C. § 1132(a)(1)(B). "'Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.'" *Harrow v. Prudential Insurance Company of America,* 279 F.3d 244, 249 (3d Cir. 2002), quoting *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir. 1990)(citing *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3d Cir.1984) and *Zipf v. Am. Tel. & Tel. Co.,* 799 F.2d 889, 892 (3d Cir.1986)). The United States Court of Appeals for the Third Circuit has explained as follows:

3

> Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."

*Harrow*, 279 F.3d at 249 (quoting *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980)).

Plaintiffs concede that they have not exhausted administrative remedies, but argue that they

should be excused on the basis that any further administrative proceedings would be futile.

"A plaintiff is excused from exhausting administrative procedures under ERISA if it

would be futile to do so." *Harrow*, 279 F.3d at 249, citing *Berger v. Edgewater Steel Co.,*

911 F.2d 911, 916 (3d Cir.1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310 (1991).

"Plaintiffs merit waiver of the exhaustion requirement when they provide a 'clear and positive

showing of futility.'" *Harrow*, 279 F.3d at 249, quoting *Brown v. Cont'l Baking Co.,* 891

F.Supp. 238, 241 (E.D.Pa.1995).

> Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally.

*Harrow*, 279 F.3d at 250, citing *Berger,* 911 F.2d at 916-17; and *Metz v. United Counties*

*Bancorp.,* 61 F.Supp.2d 364, 383-84 (D.N.J.1999) (which relied on *Berger*).

The administrative procedural postures of the seven Plaintiffs can be grouped as

follows:

> (a) Plaintiffs Lunder and Plyler each submitted an application for Disability Retirement benefits at the local company level. Their claims were denied and Lunder and Plyler did not appeal the denials to the Committee; and
>
> (b) Plaintiffs Hearne, Olay, Rhodes, Rockwell, and Wilson did not submit any claims for benefits, nor did they file an appeal.

According to Motion Control, Plaintiffs' futility arguments must fail because none of the

Plaintiffs can show that pursuit of the Plan's administrative remedies would have been futile.

With respect to Lunder and Plyler, the appeals Committee never had the chance to review

4

their initial denial, and with respect to the remaining Plaintiffs, neither the local company nor the Committee had the chance to entertain the Plaintiffs' claims at all.

Plaintiffs' argument that pursuing administrative remedies would be futile naturally relies on events occurring outside the administrative process. According to Plaintiffs, the facts show that it was Motion Control who effectively prevented the Plaintiffs from pursuing their claims at the administrative level. Moreover, Plaintiffs argue that even if they had done more to pursue their claims, Motion Control's position that Plaintiffs did not qualify for Disability Retirement benefits has not changed. Therefore, they argue that the outcome of any further administrative process would have been futile.

A review of the conduct undertaken at the administrative level reveals the following. Lunder and Plyler submitted to the company a benefits application form requesting retirement disability benefits. Both Lunder and Plyler received a letter dated August 7, 2003, from Motion Control's Human Resources manager, Norman E. Tarbell, Jr., informing them that their claims for a Disability Retirement benefit were denied. (Letter from Norman E. Tarbell, Jr. to Paul L. Plyler, August 7, 2003 (Pl. Ex. 9) and Letter from Norman E. Tarbell, Jr. to William F. Lunder, August 7, 2003 (Def. Ex. D).) Mr. Tarbell explained that the benefits were denied because the employees' termination from employment did not occur because of their disability; they were terminated because the Ridgeway facility permanently closed. (Id.) Mr. Tarbell further explained to Lunder and Plyler that their disability was determined to be effective after March 16, 2002, which is the date Motion Control considers as the permanent closure date of the Ridgeway facility. (Id.) The letters, which are identical, state in relevant part as follows:

> According to a recent review of the Plan, to qualify for a Disability Retirement, an employee must meet the following criteria:
>
> • The participant must have ten years of vesting service, and
> • The Participant must have a total and permanent disability which enables the participant to be eligible for and receiving Social Security disability benefits, and

5

> • **The participants termination must have been because of
> the disability**.
>
> The Ridgeway facility was permanently closed on March 16, 2002. To qualify
> for a Disability Retirement, an employee had to have met the above criteria and
> retired before the date the facility closed. Because your disability was
> determined effective after March 16, 2002, you do not meet the criteria for a
> Disability Retirement.

(Id. (emphasis added))

Hearne, Olay, Rhodes, Rockwell, and Wilson never made it to the stage of submitting

a claim because they were never given a benefits application form. Every time one of them

asked for an application form, so that they could then request Disability Retirement benefits,

they were told that they did not qualify for such benefits and no application form was sent.

In addition, counsel for Plaintiffs engaged in correspondence with counsel for Motion

Control specifically addressing the Plaintiffs' claims for Disability Retirement benefits and

their inability to obtain an application form. Because these letters are at the heart of

Plaintiffs' futility argument we essentially reproduce them here.

In the first letter, dated March 23, 2004, counsel sets forth the specific circumstances

with regard to two of his clients, Terry Rockwell and Don Davido (Mr. Davido suffered an

untimely death and is not a Plaintiff in the instant case). That letter included many details

about Rockwell and Davido's circumstances and stated in relevant part as follows:

> As I have previously mentioned, I was contacted by these two gentleman and
> other former employees of Motion [Control] about their possible claims for
> disability pensions. On one of the earlier occasions you and I spoke (some
> time early last year) about the subject of disability pensions, you suggested that
> I write and describe the nature of these claims so that you could review the
> matter with your client. Belatedly, I am writing now for that reason, . . . .
>
> . . . . Mr. Rockwell's last day of work was January 11, 2002, and he received
> WARN Act pay through March 16, 2002. In May 2002 Mr. Rockwell became
> disabled as the result of heart disease. He subsequently qualified for Social
> Security disability benefits in July 2002. Mr. Rockwell apparently made a
> verbal request for the paperwork to initiate a claim for disability pension
> benefits with Motion, but he was advised by Robin E. at Motion Control that
> he was not eligible for the disability pension because he was not working for
> Motion Control at the time he became disabled.
>
> . . . . . Mr. Davido last day of work was January 11, 2002, and he received

6

WARN Act pay through March 16, 2002. On May 9, 2002, Mr. Davido
suffered a heart attack that left him disabled from working. He applied with
Motion Control for a disability pension, and he actually began receiving
benefits. He was subsequently verbally informed by Norm Tarbell that he had
mistakenly received the benefits, and those benefits were discontinued. I am
no[t] aware of any actual determination sent [t]o Mr. Davido regarding the
decision to discontinue. He informs me that he was told by Mr. Tarbell that he
was not eligible for a disability pension because he was not actively employed
with Motion Control at the time he became disabled.

I am aware that there are other individuals in similar circumstances with each
of my clients. In other words, there is at least one other person who began
receiving benefits and then saw those benefits discontinued (similar to Mr.
Davido), and there are others who became disabled and then were verbally
informed by the Company that they were not eligible for disability pension
benefits (similar to Mr. Rockwell). However, to date I have not been retained
by any of those individuals, although I expect that will change in the near
future.

In view of the information set forth above, would you kindly review this matter
with your client. I have two questions. First, will Motion Control reconsider
the decision to deny disability pension benefits to either or both of these two
individuals based on the information set forth above? Second. in the event the
Company is unwilling to alter its position, will the Company require these two
individuals to bring administrative claims before pursuing a remedy in federal
court under ERISA? . . . If the Company wants these cases addressed in the
first instance through the administrative process, then I will submit claims for
both clients. If the Company were willing to agree that pursuit of the
administrative process at this stage (given the apparent number of individuals
in the same situations as these two claimants) would be futile, then I would
proceed directly with an ERISA lawsuit on their behalf.

(Letter from Robert A. Eberle, Esq. to Richard W. Perhacs, Esq., March 23, 2004.)

In response to this letter, counsel for Motion Control wrote a letter to counsel for

Plaintiffs dated April 20, 2004, in which he stated in relevant part as follows:

I enclose for your information a copy of a letter which Mr. Davido received
from the Company in August, 2003 explaining in detail why his claim for
disability pension benefits was denied. you will recall that Mr. Davido actually
received these benefits for a brief period of time. As the letter explains, this
payment was made in error and, since the mistake was on the Company's part,
he was not asked to repay any of the amount erroneously paid to him. Mr.
Rockwell's situation is identical, i.e., the disability began well after
employment ended. The plant was closed and all employees terminated on
March 16, 2002. As your letter recites, both of these individuals became
disabled in May, 2002, almost two months after their employment ended.

I also enclose for your information a copy of the relevant portion of the
pension plan. As you can see, **Section 4.3(a) clearly provides that
employment must terminate "because of a disability."** In this case the

employment of your clients, along with the employment of everyone else in the plant, terminated well before the disabilities arose. In light of the language of the plan, which seems rather clear, the Company will not reconsider its position in this matter.

I do not have authorization to waive any requirement that administrative claims be filed, so, if your clients are insistent on pursuing this despite the above information, you should proceed accordingly.

(Letter from Richard W. Perhacs, Esq. to Robert A. Eberle, Esq., April 20, 2004 (emphasis

added).)

On May 24, 2004, Plaintiffs' counsel again wrote to counsel for Motion Control, at

this time he represented all current Plaintiffs except for Mr. Wilson. Counsel stated in

relevant part as follows:

I received your letter dated April 20, 2004, in response to my letter of March 23, 2004, regarding Don Davido and Terry Rockwell. I have been contacted by the other individuals listed above [the list includes Plaintiffs Hearne, Lunder, Plyler, Rhodes, and Olay] because they also have claims for disability pensions with Motion Control. Although their individual circumstances vary somewhat, **the common thread is that each individual has been informed by the Pension Plan Administrator's office that they do not qualify for a disability pension benefit because they were not actively working for Motion Control at the time the disability claim arose.** This is the same basis asserted in the cases of Davido and Rockwell.

After I received your letter of April 20, 2004, I instructed Davido and Rockwell to once again request an application for benefits. Rockwell informed me that he contacted the Plan Administrator's office on Monday, May 17, 2004, and they refused once again to provide him with an application for benefits. I am bringing this to your attention because there does not seem to be any reason to believe that further efforts to exhaust the administrative process are warranted. If there is something further that can be done, I am asking you to advise what that next step would be. Please note that whatever would be the next step, the other individuals listed above will also pursue that step. If you require information regarding the circumstances surrounding the claims of the other individuals, please let me know and I will forward that information to you immediately.

(Letter from Robert A. Eberle, Esq. to Richard W. Perhacs, Esq., April 20, 2004(emphasis

added).) Counsel for Motion Control did not respond to this letter and thus Plaintiffs filed

their separate actions in this court, with the first-filed case being filed on September 17, 2004.

Plaintiffs argue that the sequence of events that occurred in their cases falls squarely

within the facts of *Berger,* 911 F.2d 911, in which the futility exception was accepted. The

Court in *Berger* explained as follows:

> The Plan's administrative procedures required the Pension Board to
> notify a claimant in writing of the specific reasons for the denial of a claim.
> Although the three employees failed to make written requests for benefits, this
> does not excuse Edgewater's failure to comply with the Plan's administrative
> procedures. It is clear that [the plaintiffs] made their desire for 70/80
> retirement plain to the responsible company officials. In addition, it is clear
> that the company had adopted a policy of denying all applications for 70/80
> retirement. [] We agree with the district court that Edgewater's blanket denial
> of 70/80 retirement under § 2.6(c)'s mutual interest provision and Edgewater's
> failure to comply with the Plan's administrative procedures weigh in favor of
> applying the futility exception to [the plaintiffs]. Given these circumstances,
> any resort by these employees to the administrative process would have been
> futile. Thus, the district court was correct in excepting these three employees
> from the exhaustion requirement.

*Berger,* 911 F.2d at 917 (internal citation to Record omitted).

Plaintiffs argue that their cases are similar. As in *Berger*, "responsible company

officials" were aware of Plaintiffs' desire to apply for Disability Retirement benefits, Motion

Control failed to process those requests in accordance with the Plan's administrative

procedures, and Motion Control has adopted a blanket policy of denying such claims

explaining that it "will not reconsider its position." Furthermore, counsel's request to Motion

Control for direction in light of the fact that they could net get application forms to apply for

benefits went unanswered, yet Motion Control refused to waive the administrative process.

Thus, Plaintiffs place the blame for the failure of the administrative process with Motion

Control, who understood that Plaintiffs "took every step imaginable to apply for disability

retirement benefits," but Motion Control "stonewalled" Plaintiffs and failed to "investigate,

provide an application, or otherwise address this issue." (Plaintiffs' Brief in Opposition, at 3;

Plaintiffs' Reply Brief, at 3.)

Motion Control responds to Plaintiffs' arguments by first arguing that the same

futility argument failed in the similar case of *Donachy v. Motion Control Industries*, Civil

Action 04-3245 Erie, 2005 WL 34887124 (W.D.PA. Dec. 12, 2005). We have reviewed

9

Judge Sean J. McLaughlin's Memorandum Opinion in that case, as well as the transcript from oral argument addressing the issue. We agree with Plaintiffs that the facts in the instant cases are sufficiently different from those in *Donachy* that the *Donachy* opinion offers little guidance. Significantly, in this case there is the exchange of letters between Plaintiffs' counsel and counsel for Motion Control, as well as undisputed contacts between Plaintiffs and employees of Motion Control regarding Plaintiffs' efforts to obtain a benefits application form.

A review of the facts supports a common sense conclusion that at the administrative level Motion Control was going to deny benefits to all Plaintiffs on initial review and on appeal. However, case law requires more than a common sense conclusion about what one thinks will happen; the cases require evidence of a "clear and positive showing of futility." *Harrow*, 279 F.3d at 249.

The five non-exhaustive factors for consideration of whether to apply the futility exception are:

(1) whether plaintiff diligently pursued administrative relief;

(2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances;

(3) existence of a fixed policy denying benefits;

(4) failure of the insurance company to comply with its own internal administrative procedures; and

(5) testimony of plan administrators that any administrative appeal was futile.

*Harrow*, 279 F.3d at 250; *Berger,* 911 F.2d at 916-17. The *Harrow* Court also explained that "all factors may not weigh equally." *Harrow*, 279 F.3d at 250.

In evaluating whether Plaintiffs diligently pursued administrative relief we first set forth the Plan's relevant procedures. The Plan provides the following relevant requirements for an initial claim:

Any claim for disability benefits under the Plan shall initially be filed with an individual identified by the Plan Administrator (the "administrator"). If the

10

claim is wholly or partially denied, the claimant shall be given notice in writing of the denial. This notice shall be given in writing within a reasonable period of time after receipt of the claim by the administrator. This period will not exceed 45 days after receipt of the claim [except in certain cases where the period may be extended]. . . . .

Notice of any claim denial shall be written in a manner calculated to be understood by the claimant and shall set forth the following information:

(1) the specific reasons for the denial;

(2) a specific reference to the Plan provisions on which the denial is based;

. . . .

(5) an explanation that a full and fair review by the Committee of the decision denying the claim may be requested by the claimant or an authorized representative by filing with the Committee, within 180 days after the notice has been received, a written request for review;

(6) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse decision upon review; and

(7) if an internal rule, guideline, protocol, or other similar criterion was relied upon in denying the claim, a statement that such a rule, guideline, protocol, or other similar criterion was relied upon and that a copy of the rule, guideline, protocol, or the criterion will be provided free of charge to the claimant upon request.

(Retirement Plan for Hourly Paid Employees, attached as Exhibit A to Motion Control's

Statement of Material Facts, §7.9(c).)

In the case of an appeal of a denial of an initial claim, the Plan provides the following:

If a claimant files a written request for review of a denied claim, the claimant or his or her authorized representative may request, free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim and may submit written comments, documents, records, and other information relevant to the claim within the 180-day period specified in paragraph (5) above. The notice of claim denial shall include a statement of the claimant's rights to review and submit information pursuant to this paragraph.

The review by the Committee shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim without regard to whether such material was submitted or considered as part of the initial determination, and it shall not afford deference to the decision denying the claim. . . . .

. . . .
If the claim is denied, wholly or in part, the claimant shall be given a copy of the decision promptly. The decision shall be in writing and shall be written in a manner calculated to be understood by the claimant. The decision shall

11

included specific reasons for the denial; specific references to the pertinent Plan provisions on which the denial is based; a statement that the claimant may request, free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim; a statement of the claimant's right to bring a civil action under section 502(a) of ERISA; and if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the decision on review, a statement similar to the one described in paragraph (7) above.

(Retirement Plan for Hourly Paid Employees, §7.9(c).)

There is undisputed evidence that all of the Plaintiffs initially attempted to pursue administrative remedies with Motion Control. Two Plaintiffs submitted applications for claims that were denied, and five Plaintiffs were told that they were not eligible for the Disability Retirement benefit and were never given an application form. The two Plaintiffs whose claims were denied did not file an appeal. Plaintiffs who did not receive an application form argue that they could not even file an initial application. All Plaintiffs argue that even if they did file a claim or an appeal it would have been denied based on Motion Control's fixed policy of denying such claims as shown by the written denials received by two of the Plaintiffs, counsel for Motion Control's April 20, 2004 letter confirming the policy, and the oral "denials" of benefits based on the same policy.

With regard to Motion Control's compliance with its own internal administrative procedures the evidence is abundant that Motion Control uniformly failed to comply with its own internal administrative procedures. All of Motion Control's responses to Plaintiffs were deficient. None of the denials contained any information about an appeal to the Committee despite the Plan's detailed requirements.

The two Plaintiffs who successfully applied for benefits received written denials that failed to inform them of their appeal rights, or explain how to proceed with an appeal. Five Plaintiffs never received an application form but were verbally told that they did not qualify for Disability Retirement benefits because they were not terminated because of a disability. In these instances, viewing Motion Control's actions as a denial of an application form as well as a denial of Disability Retirement benefits, it is clear that these verbal denials

12

are insufficient and do not comply with Motion Control's administrative procedures.

Counsel for Motion Control's letter specifically confirms that Rockwell and Davido are not eligible for Disability Retirement benefits because their disability began after their employment ended and therefore in Motion Control's view these Plaintiffs were not terminated because of a disability. (Letter from Perhacs to Eberle, April 20, 2004.) More generally, counsel for Motion Control states that it "will not reconsider its position" that employees whose disabilities arose after March 16, 2002, are not entitled to benefits because they were not terminated because of a disability. (Letter from Perhacs to Eberle, April 20, 2004.) To the extent that counsel for Motion Control's letter is a denial of benefits, it too is deficient in not setting forth claimant's appeal rights.

Because Motion Control's April 20, 2004 letter only addressed employees whose disabilities arose after March 16, 2002, it does not address claimant's such as Olay and Rhodes, whose disabilities arose on January 11, 2002, before their employment ended on March 16, 2002. Thus, for these two Plaintiffs we have Motion Control's verbal denial of an application, as well as Motion Control's stated denial of disability retirement benefits because Olay and Rhodes's employment terminated due to the plant closure, not because of a disability. Again, these non-written denials are deficient.

Finally, counsel for Motion Control specifically responded to Plaintiff's inquiry about whether Motion Control would waive administrative requirements by stating that "I do not have authorization to waive any requirement that administrative claims be filed, . . . ." (Letter from Perhacs to Eberle, April 20, 2004.) However, counsel for Motion Control did not offer any guidance on how to get an application form or how to otherwise address the problems Plaintiffs were experiencing in pursuing the administrative procedure.

To the extent that counsel for Motion Control engaged in discussions with Plaintiffs' counsel in an effort to resolve administrative disputes about benefits, his efforts are laudable, but it was not required. It is undisputed that after learning from Plaintiffs' counsel of the

13

Disability Retirement benefits issue, Motion Control's counsel told Plaintiffs' counsel to submit his concerns in writing to him. Thus, counsel for Motion Control steered Plaintiffs into following a course outside the administrative process. Having asked Plaintiffs to submit their concerns about claims for benefits to him and having stated Motion Control's position on a benefits issue, counsel was obligated to follow through and offer Plaintiffs a complete response, including notice of appeal rights and specific reference to administrative procedures he was insisting that Plaintiffs follow. Telling Plaintiffs to "proceed accordingly" does not satisfy the kind of notice ERISA requires. Moreover, despite knowing that some Plaintiffs were not receiving application forms, counsel for Motion Control did not take the minor step of including a benefits application form in his letter to Plaintiffs' counsel. When Plaintiffs' counsel again submitted a written request for direction on the administrative process, counsel for Motion Control inexplicably failed to respond, and Motion Control offers no explanation for counsel's actions in creating the circumstances that compelled Plaintiffs to file the instant lawsuits.

Next, we examine whether Plaintiffs acted reasonably in seeking immediate judicial review under the circumstances. As just explained, counsel for Motion Control was engaged in a dialogue about the benefit issue with Plaintiffs' counsel. He stated Motion Control's position on the benefits question, supplied insufficient information about appeal rights, failed to offer any direction, and then abandoned the dialogue without explanation. Viewed in this light, one can hardly fault Plaintiffs for seeking judicial review. On the other hand, once it became clear that counsel for Motion Control was not being helpful, and in light of his statement that exhaustion requirements would not be waived, it was incumbent upon Plaintiffs to abandon its dialogue with counsel and turn to the Plan's administrative procedures. Plaintiffs have not offered an explanation for this failure other than to point to Motion Control's failure to give them direction and the subsequent failure to respond to their May 24, 2004 letter. We are not convinced that the answer to Plaintiffs' justified frustration with

14

counsel for Motion Control was to seek immediate judicial review. To be more precise, we are not convinced that Plaintiffs were unable to figure out how to proceed administratively according to the Plan documents, nor are we convinced that Plaintiffs were justified in relying on Motion Control's counsel for direction, rather than on the Plan document itself. Despite our criticism of Plaintiffs' conduct we do find that the balance of the factors weighs heavily in favor of Plaintiffs, as explained below.

With regard to the existence of a fixed policy denying benefits, Plaintiffs' argument is twofold: first, they argue that Motion Control "effectively prevented the Plaintiffs from pursuing their claims" by refusing to supply application forms; and second, that even if Plaintiffs had filed applications for benefits or appeals of denials that Motion Control has already "made the determination that these Plaintiffs have no right to receive application forms, much less any right to disability benefits . . . . because their employment ended due to the plant closing, . . . ." (Plaintiffs' Reply Brief, at 2 & 4.)

Motion Control responds to Plaintiffs' assertion that Motion Control employees would not provide Plaintiffs with a benefit application form by implying that the assertion could not be true since there is record evidence showing that two Plaintiffs, Lunder and Plyler, did obtain and submit benefit application forms. (Motion Control's Memorandum in Opposition, at 8.) Motion Control also contends that by failing to file administrative appeals Plaintiffs never gave the Committee "the opportunity to hear [Plaintiffs'] challenge to the initial denial of their claims" or the denial of issuing an applications form. (Motion Control's Memorandum in Opposition, at 7.) Thus, Motion Control argues that Plaintiffs cannot show that an appeal to the Committee would have been futile, and they cannot show that it is certain that their claims would have been denied on appeal.

Our review of the facts shows the following. On August 7, 2003, Norman E. Tarbell, Jr., Motion Control's Human Resources Manager, stated in writing in three different letters to Motion Control employees who were seeking disability benefits that

15

According to a recent review of the Plan, to qualify for a Disability Retirement, an employee must meet the following criteria:

- The participant must have ten years of vesting service, and
- The Participant must have a total and permanent disability which enables the participant to be eligible for and receiving Social Security disability benefits, and
- The participants termination must have been because of the disability.

The Ridgeway facility was permanently closed on March 16, 2002. To qualify for a Disability Retirement, an employee had to have met he above criteria and retired before the date the facility closed. Because your disability was determined effective after March 16, 2002, you do not meet the criteria for a Disability Retirement.

(Letter from Norman E. Tarbell, Jr. to Paul L. Plyler, August 7, 2003 (Pl. Ex. 9); Letter from

Norman E. Tarbell, Jr. to William F. Lunder, August 7, 2003 (Def. Ex. D); and Letter from

Norman E. Tarbell, Jr. to Don Davido, August 7, 2003 (attached to Letter from Perhacs to

Eberle, Pl. Ex. 6).)

On April 20, 2004, Motion Control's counsel stated that Motion Control "would not

reconsider its position" that employees whose disabilities arose after March 16, 2002, are not

entitled to benefits because they were not terminated because of a disability. (Letter from

Perhacs to Eberle, April 20, 2004.) Motion Control communicated verbally to other Plaintiffs

that employees who were let go on January 11, 2002, and whose disabilities arose before

March 16, 2002, are also not entitled to benefits because their employment was terminated

due to the plant closure, not because of a disability.

Reviewing the above record evidence leads to the conclusion that Motion Control's

common policy is that employees who were let go by Motion Control because of the plant

closure on January 11, 2002, are not entitled to disability retirement benefits because they

were not terminated because of a disability. This policy appears to have been concretely

formed no later than August 7, 2003, as evidenced by the three letters issued that date by the

Human Resources Manager, and which contained identical language explaining the policy.

If Motion Control's policy was that everyone who was terminated as a result of the plant

closure is not eligible for disability benefits, from Motion Control's viewpoint it would be pointless to give them a benefits application form. Thus, every Plaintiff who asked for a form so that they could apply for disability benefits was not given a form.

The question we face is whether this is a "fixed" policy. We have no trouble concluding that Motion Control did have a fixed policy to deny disability benefits to any employee who was terminated because of the January 11, 2002 plant closure. Once the policy was determined and communicated on August 7, 2003, Motion Control ceased giving application forms and told those who asked that the reason was because they did not qualify for such benefits because they were not terminated because of a disability. Over six months after the policy was formed, counsel for Motion Control explained that to be eligible for a disability benefit an employee must be terminated "because of a disability," that everyone in the plant was terminated because the plant closed, and no one was terminated because of a disability. (Letter from Perhacs to Eberle, April 20, 2004.) Counsel also stated that Motion Control "will not reconsider its position in this matter." (Id.)

Motion Control tries to argue that counsels' April 20, 2004 letter is limited to the specific cases of the two employees mentioned in the letter. However, in explaining that the two named employees were terminated before their disabilities arose it was counsel for Motion Control who chose to expand his explanation regarding termination to include "everyone else in the plant." Moreover, there is nothing to distinguish any of the Plaintiffs with regard to how the policy would affect any of them. That is, according to Motion Control's counsel's letter, all Plaintiffs in the instant cases who were terminated because the plant closed are not entitled to disability retirement benefits because they were not terminated because of a disability. Motion Control offers no information to explain how any of the Plaintiffs would, or could, be treated differently under this policy.

17

With regard to the fifth factor, it is undisputed that there is no "testimony" of a plan administrator that any administrative appeal would be futile. Instead, we have the Human Resources Manager articulating a policy on August 7, 2003, that was forever followed thereafter; Motion Control employees refusing to allow participants to even receive, much less file, a benefits application form; and counsel for Motion Control confirming the policy that none of the employees were eligible for disability retirement benefits. None of this evidence is disputed by Motion Control. Moreover, counsel for Motion Control was explicitly informed that employees were not being given benefit application forms and thus they could not even apply for benefits. This was one issue that counsel for Motion Control was capable of resolving easily by simply including benefit application forms in his response to Plaintiffs' counsel. Had there not been a fixed policy of denying benefits, it would certainly have made sense to include the forms that human resources was refusing to provide. Instead, counsel unhelpfully told Plaintiffs to "proceed accordingly" when he knew that Plaintiffs could not proceed at all without the benefit application forms.

Our evaluation of the factors shows that they weigh in favor of Plaintiffs. Particularly significant in this case was Motion Control's Human Resources Manager and its counsel both stating in writing a policy arrived at no later than August 7, 2003. The policy was so fixed that no one in Motion Control thought that any employee in Plaintiffs' position was entitled to an application form. Although Motion Control attempts to make an issue of the fact that two Plaintiffs did receive and file application forms, Motion Control makes no mention of the fact that these two Plaintiffs actions were taken before the fixed policy came into existence on August 7, 2003.

We also note that none of Motion Control's written documents complied with its own Plan or with the directives of ERISA. Refusing to allow participants in the Plan to even file an application form fails to provide claimants with a reasonable claims procedure. In this regard, ERISA regulation 2560.503-1(l) provides as follows:

> (l) *Failure to establish and follow reasonable claims procedures.* In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l).

Based on our evaluation of the evidence and arguments, and in weighing the factors to consider whether to excuse exhaustion on the basis of futility, we find that Plaintiffs have provided a "clear and positive showing of futility." *Harrow*, 279 F.3d at 249. Therefore, Plaintiffs are excused from exhausting administrative remedies.

## II. *De Novo* or Arbitrary and Capricious Standard of Review

The United States Supreme Court has held that denials of benefits challenged under 29 U.S.C. § 1132(a) "are to be reviewed *de novo* unless the plan under consideration gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard applies." *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir. 2002) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Plaintiffs concede that the "Plan in this case grants discretionary authority to a pension Committee to administer the provisions of the Plan and to determine eligibility for benefits" and thus an arbitrary and capricious standard would normally apply (Plaintiffs' Brief, at 12.) However, Plaintiffs argue that our review should be *de novo* because there was no review at all by the Committee and because the Plan refused to allow Plaintiffs to make a claim in the first place. (Plaintiffs' Brief, at 13.)

Plaintiffs rely on a non-binding, unpublished opinion from the Fourth Circuit. (Plaintiffs' Brief, at 13, citing *Riggs v. A.J. Ballard Tire & Oil Company, Incorporated Pension Plan and Trust*, 979 F.2d 848 (Table), 1992 WL 345584, 16 Employee Benefits Cas. 1070 (4th Cir. 1992) (unpublished disposition) ("When administrative exhaustion is excused, the trial court must determine the claimant's entitlement to benefits in the first instance.").) In

19

addition to being non-binding on us, the *Riggs* opinion is also factually distinguishable from the present cases. In *Riggs*, exhaustion was excused based on futility because the president of the company was found to have acted in bad faith by depriving the employee-plaintiff of benefits due under the plan in retribution for alleged misconduct by the employee. In other words, based on unrelated alleged misconduct by the employee, the president of the company vindictively refused to take any action on his request for benefits. It was under those circumstances that the trial court   determined the claimant's entitlement to benefits *de novo*.

Motion Control's conduct in the instant cases is not comparable to the bad faith conduct of the president of the company in *Riggs*. Far from not taking any action on Plaintiffs claims, Motion Control has consistently indicated to Plaintiffs that its position is that none of the Plaintiffs are eligible for disability benefits because none of them could have been terminated because of a disability. Motion Control's position is based on its interpretation of the Plan, specifically Section 4.3(a). There is no evidence that Motion Control took this position in bad faith, and Plaintiffs do not accuse Motion Control of acting in bad faith. Plaintiffs do accuse Motion Control of preventing them from filing claims, however as discussed above, Motion Control refused to provide forms because it had taken a fixed position that employees who were terminated as a result of the plant closure were not eligible for disability retirement benefits. In contrast, the president of the company in *Riggs* appears to have taken the position that because he did not like Riggs' conduct, he was going to deny him benefits Riggs was entitled to receive.

Perhaps a *de novo* standard of review might be appropriate if Motion Control had not exercised its discretion in determining that Plaintiffs were not entitled to benefits. "Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Gritzer*, 275 F.3d at 296, citing *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir.1995) (stating

in part, that the "deferential standard of review of a plan interpretation 'is appropriate only when the trust instrument allows the trustee to interpret the instrument *and when the trustee has in fact interpreted the instrument.*'") Here, Motion Control did exercise its discretion in interpreting the Plan and denying benefits. The fact that it did not conduct itself in accordance with Plan and ERISA procedures does not mean that Motion Control acted arbitrarily or that its decision to refuse to give the forms was not based on its interpretation of the Plan. Plaintiffs appear to be aware of this as they do not attempt to argue for a *de novo* standard of review based on Motion Control's failure to exercise its discretion. In fact, it is because we found that Motion Control *did* exercise its discretion when it developed a fixed policy based on its interpretation of Section 4.3(a), that we were able to find that it would be futile for Plaintiffs to exhaust their administrative remedies.

There being no reason to apply a *de novo* standard of review in this case, we find that our review of Motion Control's denials of Plaintiffs' claims are to be reviewed under an arbitrary and capricious standard. Under this standard of review we cannot say that Motion Control's decision to deny benefits was arbitrary or capricious, "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000). Motion Control denied disability retirement benefits to employees who were terminated because of the plant closing on January 11, 2002, finding that none of these employees were eligible for disability retirement benefits because their employment was not terminated "because of a disability." *See* Section 4.3(a) of the Plan. This determination by Motion Control, rather than being arbitrary or capricious, is a plain language interpretation of the Plan's terms. Thus, under Motion Control's interpretation of the Plan, no Plaintiff is entitled to a disability retirement benefit.

**III. Conclusion**

We have found that Motion Control had a fixed policy of denying benefits to all persons in the same circumstances as Plaintiffs and that Plaintiffs are excused from

21

exhausting their administrative remedies. Since Motion Control's reason for denying benefits was not arbitrary or capricious none of the Plaintiffs can prevail on their claims for disability retirement benefits. There being no genuine issues of material fact remaining, we will enter summary judgement in favor of Defendants and against Plaintiffs.

An appropriate Order will be entered.

May 17, 2007
Date

Maurice B. Cohill
Maurice B. Cohill, Jr.,
Senior United States District Judge

22